UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Case No. 24-cr-15 (NEB-DTS)

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> -against- <br><br> GANDI YUSEF MOHAMMED <br> a/k/a/ Gandi Abdi Kediye, *et al.*, <br><br> *Defendants*. | **MEMORANDUM IN SUPPORT OF MOTION FOR BRADY MATERIAL** |

GANDI ABDI KEDIYE ("KEDIYE"), by and through the undersigned counsel, submits this Memorandum in Support of his accompanying Motion directing the government to provide disclosure pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.

On January 24, 2024, Kediye and six others were charged in a 47-count indictment charging a general conspiracy (Count 1), wire fraud (Counts 2-20), conspiracy to commit federal programs bribery, (Count 21; Kediye not charged), Federal Programs Bribery (Counts 22-37; Kediye not charged), conspiracy to commit money laundering (Count 38), and money laundering (Counts 39-47), related to an alleged scheme to fraudulently obtain federal funds through the Feeding our Future food program ("FOF"). *See* Doc. 1, Indictment.[1] Kediye is only named in Counts 1 (general conspiracy), 2-20 (wire fraud), 38 (conspiracy to commit money laundering, 18 U.S.C. § 1956) and 41, 42, 45, and 47 (money laundering; 18 U.S.C. § 1957).

---

[1] Unless otherwise noted, citations to "Doc." refer to docket entries in the instant case, *United States v. Mohammed*, 24-cr-15 (D. Minn.).

1

Kediye's involvement, per the charging document, Rule 16 disclosure, and grand jury testimony, was limited. He is not implicated in the bribery counts, nor was it alleged that he returned federal funds obtained by his co-defendants back to them for their personal use. *See e.g.*, Doc. 1 at 12, 15, 16,19-21, 22, 23-24, 34. According to the Indictment, Kediye's accepted rent payments made out to two companies he owned (G.I.F. Properties and G.A.K. Properties) from co-defendants for using space for their allegedly sham corporations in his building, wiring funds from GIF and GAK to the legal owner of the building pursuant to his payment-for-deed contract,[2] and sending three e-mails to FOF, two of which were blank (Counts 17-18) and one that included a list of meals and an invoice from Star Distribution for meal counts (Count 19).

Kediye's limited involvement is also reflected in the grand jury testimony of FBI Agent Travis Wilmer, which was provided in discovery. Kediye's name only comes up eight times, and each time in a conclusory format, with the AUSA asking Agent Wilmer leading questions implicating the language from the charges against Kediye.

Defendant seeks to clarify government's obligation to search for and produce such materials in this case extends to all federal and state agencies involved in the investigation that led to the Feeding Our Future indictments as well as other agencies, not directly involved, as to which the government has knowledge of and access to case related information. These defendants also move pursuant to Fed R. Crim. P. 16(a)(1)(E) that the government produce material documents and objects in the possession of other federal and state agencies involved in the investigation as well as other agencies, not directly involved,

---

[2] A "payment-for-deed contract" is a contract whereby the buyer of property makes monthly installments directly to the seller to purchase a property over time, with the seller retaining legal title until the final payment is made.

as to which the government has knowledge of and access to case related information. Defendants now submit this memorandum of law in support of this motion.

## ARGUMENT

The prosecution's *Brady, Giglio* obligations extend to all federal and Minnesota state agencies involved in the overlapping Feeding Our Future investigation.

"Due process and notions of fair play require the government to disclose all evidence that is 'favorable to an accused' and 'material either to guilt or punishment.'" *United States v. Sandoval-Rodriguez*, 452 F.3d. 984, 990 (8th Cir. 2006) *quoting Brady v. Maryland*, 373 U.S. 83, 87 (1963). "Under *Brady* and its progeny, prosecutors have a duty to disclose to the defense all material evidence favorable to the accused, including impeachment and exculpatory evidence." *United States v. Wright*, 866 F.3d 899, 908 (8th Cir. 2017) (citations omitted). "Exculpatory evidence includes 'evidence affecting' witness 'credibility,' where the witness's 'reliability' is likely to be determinative of guilt or innocence.'" *United States v. Dornsbach*, 2023 WL 2666480 at * 4 (D. Minn. 2023) *citing Giglio*, 405 U.S. 154).

Attendant to this duty to disclose is the prosecutor's duty to learn of material evidence favorable to the accused. *See United States v. Robinson*, 809 F.3d 991, 996 (8th Cir. 2016). The Eighth Circuit has explained that "[t]his attendant duty to learn of material and favorable exculpatory evidence necessarily anticipates that a prosecutor will have an opportunity to discover such evidence through the exercise of reasonable diligence." *Id*.

The prosecution's duty to disclose material evidence favorable to the accused extends to such evidence known to others who act on the prosecution's behalf including the police. *See Wright*, 866 F.3d at 908. Where federal and state agencies have "pooled

3

their investigative energies" and federal and state investigations overlap, the government's duty to disclose material evidence favorable to the accused extends to evidence and information in the possession of the state agencies. *See United States v. Risha*, 445 F.3d 298, 304-306 (3d Cir. 2006); *United States v. Antone*, 603 F.2d 566, 569-570 (5th Cir. 1979). Central to this inquiry is whether the state and federal agencies "are part of a team or are engaged in a joint effort." *Risha*, 445 F.3d at 305. In these circumstances, as the Third Circuit explained, there exists "cross-jurisdiction constructive knowledge." *Id*. at 299. "Imposing a rigid distinction between federal and state agencies which have cooperated intimately from the outset of an investigation would artificially contort the determination of what is mandated by due process." *Antone*, 603 F.2d at 570.

      Here, federal and state agencies, including the Office of the Minnesota Attorney General and the Minnesota Department of Education, were engaged in a joint effort that led to the Feeding Our Future indictments including the Superseding Indictment in the instant case. The Minnesota Attorney General's Press Release of September 26, 2022, could not make this any clearer. According to the press release, the "Federal investigation and indictments would not have happened without Attorney General's involvement." *See* https://www.ag.state.mn.us/Office/Communications/2022/09/26_FeedingOurFuture.asp. The press release further states "Early on, the Attorney General's Office worked side by side with MDE (Minnesota Department of Education) to flag evidence of fraud, demand correction from feeding Our Future, ….and most importantly, bring evidence of criminal fraud to the FBI, which led directly to the federal criminal investigation and criminal indictments of Feeding Our Future for fraud." *Id*. The Minnesota state agencies "fully

4

cooperated with the investigation that they jump started." *Id*. Further, the indictments were a "direct result" of the cooperation between the federal and state agencies. *Id.*

Former United States Attorney General Merrick B. Garland notes that "[i]n partnership with agencies across government, the Justice Department will continue to bring to justice those who have exploited the pandemic for personal gain and stolen from American taxpayers." *See*, Press Release, Department of Justice, Office of Public Affairs, Tuesday, September 20, 2022, " U.S. Attorney Announces Federal Charges Against 47 Defendants in $250 Million Feeding Our Future Fraud Scheme." https://www.justice.gov/archives/opa/pr/us-attorney-announces-federal-charges-against-47-defendants-250-million-feeding-our-future. Federal investigative and prosecutorial officials repeatedly thank their "law enforcement partners" in holding "these defendants accountable." *Id*.

Voluminous Rule 16 disclosure reflects the involvement of numerous state and federal agencies in the Feeding Our Future Investigation.

As all of the listed state and federal agencies were involved in the overlapping Feeding Our Future investigations, the government's obligation under *Brady* and its progeny extends to material evidence favorable to the accused in the possession of these agencies. The defendants request that the Court modify its existing order to produce *Brady* materials to include all of these agencies and the specific items identified in the accompanying Motion, as follows:

1. Witness statements favorable to the defense;

2. Existence of witnesses favorable to the defense;

3. Evidence which detracts from the credibility or probative value of testimony or evidence used by the prosecution, specifically:

   a. Informants' statements, directly or indirectly, that the Gandi was not part of the offenses alleged in the Indictment;
   b. Information that Gandi had no role in food purchases, billing, payment, packaging or distribution;
   c. Informants' statements, directly or indirectly, that Gandi's role was that of landlord to food distribution networks;
   d. Pictures and/or surveillance photos, directly or indirectly, that the Gandi was not part of the offenses alleged in the Indictment;

4. Promises of immunity or favorable treatment to any government witness; and

5. Prior contrary statements of any prosecution witness.

   For the forgoing reasons, Gandi Kediye requests that the government be required to conduct a search for any materials responsive to the within demand and that the within motion be granted.

Dated: December 8, 2025

Respectfully submitted,

_____
NICHOLAS KAIZER
NY Bar 2123362
Levitt & Kaizer
Attorneys at Law
40 Fulton Street, 17th Floor
New York, N.Y. 10038-1850
(212) 480-4000
(917) 324-4000 cell
nkaizer@landklaw.com
*Attorneys for GANDI ABDI KEDIYE*