UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-15(5) (NEB/DTS)

UNITED STATES OF AMERICA,

               Plaintiff,

v.

SHAKUR ABDINUR ABDISALAM,

               Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

The United States of America and the defendant, Shakur Abdinur Abdisalam, agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.     **Charges**.  The defendant agrees to plead guilty to Count 7 of the Superseding Indictment, which charges the defendant with Wire Fraud, in violation of Title 18, United States Code, Section 1343. The defendant fully understands the nature and elements of the crimes with which he has been charged.  At the time of sentencing, the United States agrees to move to dismiss the remaining charges against him in the Superseding Indictment.

2.     **Factual Basis**.  The defendant is pleading guilty because he is in fact guilty of Count 7 of the Superseding Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable

doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

Between February 2021 and January 2022, the defendant knowingly participated in a scheme to defraud the Federal Child Nutrition Program, a program designed to provide free meals to children in need. As part of the scheme, the defendant purported to operate a Federal Child Nutrition Program site in Minneapolis, Minnesota. The defendant operated the food site through an LLC in his name called Inspiring Youth & Outreach LLC. Through Inspiring Youth, the defendant purported to run the site and serve meals to children.

On February 2, 2021, the defendant registered Inspiring Youth with the Minnesota Secretary of State, in order to participate in the Federal Child Nutrition Program through Feeding Our Future. The next day, the defendant applied with Aimee Bock, the Executive Director of Feeding Our Future, to enroll Inspiring Youth in the food program under the sponsorship of Feeding Our Future. The Inspiring Youth site address was located at the same address in north Minneapolis as a site purportedly operated by United Youth, a company owned by the defendant's sister-in-law. Within days, the defendant claimed to be serving meals to more than 1,000 children per day. In March 2021, the defendant signed meal count sheets claiming that the Inspiring Youth site served supper and a snack to over 1,500 children a day, seven days a week.

In total, Inspiring Youth claimed to have served over 700,000 meals and snacks between February and December 2021. These claims, however, were inflated

and fraudulent, and they far exceeded any legitimate meals served. Even so, the defendant signed off on many of Inspiring Youth's meal counts as the site supervisor.

To support those inflated and fraudulent claims, the defendant's co-conspirators generated fraudulently inflated invoices, falsely indicating that Inspiring Youth had purchased and received larger volumes of food than, in fact, had been purchased and received. Inspiring Youth then submitted those inflated invoices, along with inflated meal claims, to Feeding Our Future for approval and payment Many of those invoices were from a company called Star Distribution. In all, Inspiring Youth transmitted more than $1 million dollars directly to Star Distribution.

As a further part of the scheme, and to support the inflated meal claims, the Inspiring Youth also submitted rosters with the names of children purportedly served at its sites, which the defendant knew were fraudulent. The rosters, which generally claimed perfect attendance by each child listed for each day in the month and listed more children than actually received meals, were not accurate, contained fake names, and were created and submitted for the purpose of making it appear Inspiring Youth actually served the number of meals it claimed.

Between February and December 2021, the defendant claimed to have served over 700,000 meals to children. As a result of those claims, the Minnesota Department of Education paid out over $1.5 million dollars to Inspiring Youth. Rather than use the food program funds to feed children, the defendant transferred the bulk of the fraud proceeds his company received to his conspirators, including to

3

Star Distribution, to an entity called GIF Properties, and to an entity called IM Consultation. The defendant's company ultimately received $456,681 in food program funds.

To further this scheme to defraud the Federal Child Nutrition Program, the defendant caused interstate wires to be sent, including emails through servers hosted by Google. This included the wire alleged in Count 7 of the Superseding Indictment, which was an email sent from the defendant to Feeding Our Future attaching meal counts and rosters for Inspiring Youth on or about May 5, 2021.

3.    **Waiver of Pretrial Motions**. The defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4.    **Waiver of Constitutional Trial Rights**. The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will

4

be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences**. The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6. **Statutory Penalties**. The parties agree that wire fraud, as charged in Count 7 of the Superseding Indictment, carries statutory penalties of:

   a. a maximum term of imprisonment of 20 years in prison;

   b. a supervised release term of up to three years;

   c. a fine of up to $250,000, or twice the gross gain or loss from the offense, whichever is greater; and

   d. a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

7. **Revocation of Supervised Release.** The defendant understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke his supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands

that as part of any revocation, the Court may include a requirement that he be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

8.    **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

a.    Base Offense Level. The parties agree that the base offense level for Count 7 is 7. U.S.S.G. § 2B1.1(a)(1).

b.    Specific Offense Characteristics. The parties agree that a **12-level** enhancement applies pursuant to U.S.S.G. § 2B1.1(b)(1)(I) because the loss was more than $250,000 but not more than $550,000. The parties agree that the offense level should be increased by **2 levels** because the offense involved conduct described in 18 U.S.C. § 1040 (Fraud in Connection with a Major Disaster or Emergency Benefits) and as set out in Guidelines § 2B1.1(b)(12). The parties agree that no other specific offense adjustments apply.

c.    Chapter 3 Adjustments. The defense believes that the offense level should be reduced by **4 levels** pursuant to U.S.S.G. § 3B1.2(b) because the defendant was a minimal participant in any criminal activity. The government reserves the right to challenge this reduction.

The parties otherwise agree that, other than credit for acceptance of responsibility, no additional Chapter 3 adjustments apply.

d.    Acceptance of Responsibility. The government agrees to recommend that the defendant receive a **2-level** reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of the defendant's intention to enter a plea of guilty, the government

agrees to recommend that the defendant receive an additional **1-level** reduction pursuant to U.S.S.G. § 3E1.1(b). Whether this reduction will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

e.   Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.   Zero-Point Offender Adjustment. Assuming the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a **2-level** adjustment under U.S.S.G. § 4C1.1.

g.   Guidelines Range. If the adjusted offense level is **16** as calculated by the government, and the criminal history category is I, the Sentencing Guidelines range is **21 to 27** months of imprisonment. If the adjusted offense level is **12** as calculated by the defense, and the criminal history category is I, the Sentencing Guidelines range is **10 to 16** months of imprisonment.

7

h. <u>Fine Range</u>. If the adjusted offense level is **16** as calculated by the government, the Sentencing Guidelines fine range is **$10,000** to **$95,000**. U.S.S.G. § 5E1.2(c)(3). If the adjusted offense level is **12** as calculated by the defense, the Sentencing Guidelines fine range is **$5,500** to **$55,000**. U.S.S.G. § 5E1.2(c)(3).

9. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10. **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11. **Special Assessment**. The Sentencing Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant

8

is convicted. U.S.S.G. § 5E1.3. The defendant agrees that the special assessment is due and payable at the time of sentencing.

12.    **Restitution Agreement**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crime. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Superseding Indictment. The defendant agrees that he owes restitution in the amount of $456,681.62.

13.    **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the Defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The Defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed

9

by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

**Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the wire fraud charged in Count 7 of the Superseding Indictment. The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets, and to forfeit additional directly forfeitable property.

The defendant agrees that the United States may, at its option, forfeit the Property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge (including direct appeal, habeas corpus, or any other means) such forfeiture, directly or through any company he owns or controls, on any grounds.

The defendant consents to the entry of a money judgment forfeiture in the amount of $456,681.62, which represents the proceeds Inspiring Youth & Outreach LLC obtained from the wire fraud scheme alleged in Count 7 of the Superseding Indictment. The defendant will receive a credit against the money judgment forfeiture for the net value of all property that is forfeited from him in this matter. The United States reserves the right to seek forfeiture of substitute assets and any additional directly forfeitable property.

14.     **<u>Waivers of Appeal and Collateral Attack.</u>** The parties hereby waive the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to: the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the negotiation, taking or acceptance of the guilty plea, the sentence imposed or any issues that relate to the calculation of the Guidelines range, the supervised-release term and conditions imposed, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the top of the Guidelines range, and an appeal by the government of the substantive reasonableness of a term of imprisonment below the bottom of the Guidelines range.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

15.     **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

16.     **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant.  By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

Dated: 3/18/26

DANIEL N. ROSEN
United States Attorney


BY:
REBECCA E. KLINE
MATTHEW C. MURPHY
MATTHEW D. EVANS
Assistant United States Attorneys


Dated: 3/18/26

SHAKUR ABDINUR ABDISALAM
Defendant


Dated: 3/18/26

RYAN PACYGA
Counsel for Mr. Abdisalam

13