UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-15(3) (NEB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | |
| v. | ) | **GOVERNMENT'S POSITION REGARDING SENTENCING** |
| AISHA HASSAN HUSSEIN, Defendant. | ) | |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Matthew C. Murphy, Rebecca E. Kline, and Austin L. Bowyer, Assistant United States Attorneys, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 27 months in prison.

Defendant Aisha Hussein operated two Federal Child Nutrition Program meal sites, sponsored by Feeding Our Future, called United Youth of MPLS ("United Youth"). Ms. Hussein and her codefendant, Ikram Mohamed, registered United Youth with the Minnesota Secretary of State on December 8, 2020. The very next day, Ms. Hussein applied to enroll United Youth in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future. The Minnesota Department of Education (the "MDE") questioned the application because there already were meal distribution sites at both of United Youth's purported locations. Feeding Our Future Executive Director Aimee Bock responded, falsely, that multiple programs operated from the same

building but served different children. Based on this misrepresentation, the MDE approved United Youth's application.

Immediately after being approved as a Federal Child Nutrition Program site, the defendant fraudulently claimed that United Youth was serving meals to hundreds of children per day, seen days a week. In February 2021, the defendant submitted meal count sheets claiming United Youth served two meals per day, to over 1,200 children. By May of 2021, the defendant was claiming that United Youth served two meals a day to over 2,600 children. Those claims were grossly exaggerated. To support United Youth's fraudulent meal reimbursement claims, the defendant submitted phony rosters and obtained fakie invoices from her brother's sham food vendor business, Star Distribution.

In about an 11-month period, the defendant claimed that Untied Youth served over 1.5 million meals to children. Based on the defendant's fraudulent meal reimbursement claims, the MDE paid over $4.3 million in Federal Child Nutrition Program funds, including over $2.4 million to United Youth and $1.9 million to Star Distribution. The defendant transferred most of those funds to her codefendants—primarily her brother Suleman Mohamed and sister Ikram Mohamed—keeping approximately $405,000

Ms. Hussein was charged by indictment on January 24, 2024. She pleaded guilty to one count of wire fraud (Count 2) on March 20, 2026.

**SENTENCING RECOMMENDATION**

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id.* at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts in arriving at an appropriate sentence. *Id.* at 49–50; *see also United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

### A. Sentencing Guidelines Range

The Sentencing Guidelines calculations contained in the PSR differ substantively from those contained in the parties' plea agreement. The government agrees that the based offense level for Count 2 is 7, and that a 2-level enhancement should be added because the defendant committed fraud in connection with a major disaster or emergency benefit. PSR ¶¶ 83, 86. The government further agrees that the base offense level should be decreased by 3 levels pursuant to Guidelines § 3E1.1(a) and (b) because the defendant accepted responsibility in a timely manner, and by another 2 levels pursuant to § 4C1.1(a) because the defendant meets the zero-point offender criteria. PSR ¶¶ 91-93.

Because the loss caused by the defendant's fraud was between $2 million and $5 million, the PSR added a 16-level enhancement pursuant to § 2B1.1(b)(1)(I). And because United Youth was registered as a non-profit corporation, the PSR added a 2-level enhancement pursuant to § 2B1.1(b)(9). Although the government does not dispute that the facts support the application of those enhancements, they were not included in the parties' plea agreement and so the government will not advocate for their application here. Instead, the government's sentence recommendation honors the parties' agreement that the base offense level is increased by just 12 points due to loss amount, and that no increase applies based on United Youth's status as a non-profit company.

Accordingly, whereas the PSR calculated a total offense level of 22, and a Guideline sentence range of 41-51 months, the government's sentence recommendation presumes the advisory Guideline range of 21-27 months contained in the plea agreement.

**B. Section 3553(a) Sentencing Factors**

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

**1. Nature and Circumstances of the Offense**

The defendant participated in one of the largest fraud schemes in the history of the District of Minnesota, and the single largest Covid-19 fraud scheme in the country. She took money intended to feed children who no longer could get regular, nutritious meals at school, and used it to enhance her lifestyle. She knew she was not entitled to the money and that it was obtained by lying to the government about the number of children she allegedly served meals to. Simply put, she took advantage of a once-in-a-century global pandemic and the generosity of American taxpayers to enrich herself.

**2. History and Characteristics of the Defendant**

Ms. Hussein was born in Finland in 1996. She had a stable upbringing and enjoyed healthy relationships with her parents and 6 siblings. In 2010, Ms. Hussein and her family immigrated to Minnesota to be closer to her 5 half-siblings. She graduated from Southwest High School in South Minneapolis in 2015 and obtained an associate's degree from Minneapolis Community College in 2021. Ms. Hussein became a registered nurse in 2023 but has not practiced since 2025. She is single and does not have children. She has no significant physical or mental impairments. Ms. Hussein lives with her parents in South Minneapolis.

**3. Deterrence, Respect for the Law, Just Punishment, and Protecting the Public**

The Court must also consider the need for the sentence to afford adequate deterrence, promote respect for the law, provide just punishment, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a).

Ms. Hussein's crime must be viewed in context of the rampant fraud that has plagued Minnesota in recent years. Unprecedented levels of fraud perpetrated on public benefits programs in Minnesota have eroded trust in the government and raised questions about the sustainability of those programs. Too many people, Ms. Hussein included, participate in this kind of fraud because, as they see it, everyone else is doing it. This cynical view must be stopped. It has undermined and endangered important government programs as well as legitimate nonprofit organizations that rely on donations to carry out actual charitable work.

On the other hand, Ms. Hussein's conduct appears to be an aberration in an otherwise law-abiding life. She has no criminal history points and ultimately accepted responsibility for her conduct. Her background and seemingly genuine contrition are not indicative of someone who is likely to recidivate.

**4. The Need to Avoid Unwanted Disparities**

Finally, the Court must consider the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a). One Feeding Our Future defendants in particular who already has been sentenced is a good comparator. Filsan Hassan operated a fraudulent meal site through a non-profit entity and caused a loss of between $2 million and $5 million, the same Guideline loss range as Ms. Hussein. The two are relatively close in age, were brought into the fraud scheme by their older and more culpable relatives (Qasam Hassan, Ms. Hassan's mother, and Ikram Mohamed, Ms. Hussein's older sister), and personally pocketed approximately $400,000 in fraud proceeds. There are, however, also some meaningful differences between the two. Whereas Ms. Hassan

pleaded guilty to both conspiracy to commit wire fraud and money laundering, Ms. Hussein pleaded guilty to wire fraud only. And, more significantly, unlike Ms. Hussein, Ms. Hassan had a significant criminal history and repeatedly violated the terms of her release conditions. The government submits that sentence of 27 months for Ms. Hussein, which is 10 months less than the sentence Ms. Hassan received, is therefore warranted.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court impose a sentence of 27 months in prison.

Respectfully Submitted,

Dated: November 10, 2026,

DANIEL N. ROSEN
United States Attorney

/s/ *Matthew C. Murphy*
BY: REBECCA E. KLINE
MATTHEW C. MURPHY
AUSTIN L. BOWYER
Assistant U.S. Attorneys